IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY INFORMATION CENTER      )
                                            )
              Plaintiff,                    )
                                            )
      v.                                    )   Civ. No. 02-1233
                                            )   Judge Bates
DEPARTMENT OF DEFENSE                        )
                                            )
              Defendant.                    )
_____ )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Electronic Privacy Information Center ("EPIC") respectfully submits this memorandum in support of its motion for a preliminary injunction ordering defendant Department of Defense ("DoD") to grant plaintiff preferred status as a "representative of the news media" under the fee provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(A)(ii), and further ordering defendant to desist from its requirement that plaintiff agree to incur document search fees as a condition precedent to the processing of plaintiff's FOIA request.

## STATEMENT OF THE CASE

At issue in this case is whether plaintiff, based upon information it submitted to defendant DoD, qualifies for status as a "representative of the news media" under the FOIA.  Such status would limit the type of fees plaintiff may be assessed in conjunction with defendant DoD's processing of plaintiff's FOIA requests; "news media" requesters may only be assessed fees for duplication of records, while the less favored "other" category of

requesters may be charged for agency search time as well. Defendant DoD has denied plaintiff "news media" status and refuses to process plaintiff's pending FOIA request until plaintiff agrees to incur both duplication and search fees as an "other" category requester.

## STATEMENT OF FACTS

By letter to defendant DoD dated February 21, 2002, plaintiff requested copies of agency records under the FOIA.  Specifically, plaintiff requested copies of "all agency records concerning [DoD's] Information Awareness Office; its director, Admiral (retired) John Poindexter; and Syntek Corporation [Admiral Poindexter's previous employer]."  For purposes of fee assessment, plaintiff requested that "EPIC be placed in the category of 'news media' requester."  In support of its request, plaintiff stated that "EPIC publishes a biweekly electronic newsletter, issues regular public reports and analyses, and maintains a free online electronic library," and that "[a]ny information that is obtained as a result of this request will be disseminated through these publications and others."  Ex. 1, attached to Declaration of David L. Sobel ("Sobel Dec.").

By letter to plaintiff dated March 1, 2002, defendant DoD responded to plaintiff's FOIA request and asserted that it was "denying your request to be considered as a representative of the news media."  Defendant further asserted that "we have placed you in the 'other' fee category.  As such, you must pay all search and duplication fees incurred in the processing of your request,

except for the first two hours of search time and the first 100 pages of duplication, which are furnished without charge." Finally, defendant DoD advised plaintiff that "a search for documents responsive to your request will not be initiated until we receive your willingness to pay fees that you may incur as an 'other' requester."  Ex. 2 (attached to Sobel Dec.).

By letter to defendant DoD dated March 12, 2002, plaintiff appealed the denial of its request to be classified as "a representative of the news media" under the FOIA.[1]  In support of its appeal, plaintiff reiterated the information concerning EPIC and its activities that it had previously submitted to the agency. Specifically, plaintiff stated that:

> EPIC is a non-profit, educational organization that
> routinely and systematically disseminates information to
> the public.  This is accomplished through several means.
> First, EPIC maintains a heavily visited Web site that
> highlights the "latest news" concerning privacy and
> civil liberties issues.  . . .  The site also features
> scanned images of documents EPIC obtains under the FOIA.
> Second, EPIC publishes a bi-weekly electronic newsletter
> that is distributed to over 15,000 readers, many of whom
> report on technology issues for major news outlets.  The
> newsletter reports on relevant policy developments of a
> timely nature (hence the bi-weekly publication
> schedule).  It has been published continuously since
> 1996, and an archive of past issues is available at our
> web site.  Finally, EPIC publishes and distributes
> printed books that address a broad range of privacy,
> civil liberties and technology issues.

---

[1] In its March 12, 2002, letter to defendant DoD, plaintiff also appealed DoD's initial determination to deny plaintiff's request for a waiver of assessable fees.  Defendant DoD has taken the position that the fee waiver issue cannot fully be assessed until the requested documents are processed.  See Ex. 4 at 2 ("Until such time as any responsive records have been reviewed, an objective decision cannot be made as to the informative value of the information").  As such, plaintiff is not yet asserting its entitlement to a fee waiver in this action.

Ex. 3 (attached to Sobel Dec.).  Plaintiff attached to its appeal letter a copy of the homepage of the EPIC web site; a copy of a web page displaying scanned images of documents EPIC obtained under the FOIA; a copy of a web page displaying an archive of past issues of the EPIC electronic newsletter; and a list of EPIC publications.  <u>Id</u>.

By letter to plaintiff dated April 16, 2002, defendant DoD advised plaintiff that it was "denying your appeal for EPIC to be considered a representative of the news media, and accordingly it should be classified as an 'other' requester."  In support of defendant's determination, D.O. Cooke, Director of Administration and Management for the Office of the Secretary of Defense, wrote:

> You state that EPIC is an educational organization that disseminates information instead of being an entity that is both organized and operated to disseminate information.  Additionally, the EPIC internet website states that "EPIC is a public interest research center."  Therefore, I am denying your appeal for EPIC to be considered a representative of the news media, and accordingly it should be classified as an "other" requester.

Ex. 4 (attached to Sobel Dec.) at 1.  Mr. Cooke reiterated that "a search for responsive documents will not be initiated" until plaintiff states its "willingness to pay fees that you may incur as an 'other' requester."  <u>Id</u>. at 2.

By letter to defendant DoD dated May 10, 2002, plaintiff requested "reconsideration of the determination that [plaintiff] is not qualified to be treated as a 'representative of the news media' for fee assessment purposes."  In support of its request, plaintiff stated, <u>inter alia</u>, that:

EPIC disseminates information to the public in several
distinct ways.  We believe that these mechanisms, which
we have consciously developed to distribute information
as broadly as possible, establish that EPIC is
"organized and operated to publish or broadcast news to
the public."

We maintain a heavily visited Web site that highlights
the "latest news" concerning privacy and civil liberties
issues.  These featured news items reflect EPIC's
editorial judgment concerning what is newsworthy for our
audience, and include EPIC's analysis of information
derived from a variety of sources, including material
obtained under the FOIA.

. . .

EPIC publishes a bi-weekly electronic newsletter that is
distributed to over 15,000 readers, many of whom report
on technology issues for major news outlets.  The
newsletter reports on relevant policy developments of a
timely nature (hence the bi-weekly publication
schedule).  As with the news items published on our
homepage, the newsletter reports on recent events of
interest to our subscribers and incorporates information
from a variety of sources (including FOIA requests), as
well as EPIC's analysis of such data.  It is available
at no charge to any individual or organization that
chooses to subscribe.  The newsletter has been published
continuously since 1996, and, as previously noted, an
archive of past issues is maintained at our web site.

. . .

EPIC publishes and distributes printed books that
address a broad range of privacy, civil liberties and
technology issues.  A list of EPIC publications was
previously provided.  Similar to our website and
newsletter, these paper publications reflect EPIC's
analysis of information derived from various sources and
which we believe is of interest to our audience.

Ex. 5 (attached to Sobel Dec.) at 2-4.  Plaintiff attached to its

request for reconsideration a copy of a sample issue of EPIC's

electronic newsletter.  Plaintiff also provided examples of news

items that have been featured on its Internet homepage and that

are now available in the news archive on its website (which,

plaintiff noted, contains news items dating back to 1998).  Id.

By letter to plaintiff dated May 28, 2002, defendant DoD
responded to plaintiff's request for reconsideration and advised
plaintiff that it "cannot be considered as a 'representative of
the news media.'"  In support of defendant's final determination,
D.O. Cooke wrote:

> While I do not deny that EPIC disseminates information
> in a number of ways, I contend that while an
> organization has an ability to disseminate it does not
> necessarily follow that it is organized and operated to
> publish or broadcast news to the public.  . . .
>
> Your website . . . does not . . . contend that EPIC is
> organized to publish or broadcast news.  Rather, it
> states that EPIC conducts research and focuses public
> attention [sic].  Additionally, one of the intents of
> Congress in passing the Freedom of Information Reform
> Act of 1986 was to delineate between a public interest
> organization, which EPIC claims to be, and a news media
> organization.  . . .  [P]ublic interest groups such as
> EPIC do not fall within the media (most favorable fee)
> category.  . . .
>
> Further, on its web site EPIC claims to be incorporated
> as a tax-exempt corporation under Title 26 USC §
> 501(c)(3).  . . .  This section of the tax code does not
> provide for an organization that is organized and
> operated to publish or broadcast news to the public to
> be considered as a tax exempt corporation.  Therefore,
> since the Internal Revenue Service approved your
> application as a tax-exempt organization, you cannot be
> "organized and operated to publish or broadcast news to
> the public," and accordingly cannot be considered as a
> "representative of the news media."

Ex. 6 (attached to Sobel Dec.) at 1-2.  Defendant further advised
plaintiff of its right to seek judicial review of defendant's
determination.  Id.

Defendant's actions are particularly egregious in light of
the fact that, prior to the agency determinations described
herein, the Defense Technical Information Center and the National

Security Agency, both components of defendant DoD, had recognized plaintiff as a "representative of the news media" for purposes of FOIA fee assessments.  Exs. 7 & 8 (attached to Sobel Dec.).  As such, defendant appears to have adopted a policy and practice of interpreting its regulations so as to deny plaintiff the favorable fee assessment status that defendant DoD had previously accorded to plaintiff.

## ARGUMENT

The issues in this case are simple and not subject to serious dispute.  In compliance with the FOIA and defendant DOD's regulations, plaintiff requested treatment as a "representative of the news media" for purposes of FOIA fee assessment.  In support of its request, plaintiff submitted extensive information that clearly established its entitlement to that status.  In violation of the statutory fee provision and the controlling caselaw, defendant has chosen to deny plaintiff's request.  Defendant's refusal to grant plaintiff the preferred fee status to which plaintiff is entitled is clearly unlawful and should be restrained.

### I. The Statutory Fee Structure

Congress amended the FOIA fee provisions in 1986 in order to "keep fees from becoming an unnecessary barrier to disclosure," 132 Cong. Rec. H9464 (Oct. 8, 1986) (Joint Analysis of Reps.

English and Kindness).[2]  As amended, the statute requires agencies to render two distinct determinations when assessing FOIA processing fees against a requester.  First, the agency must determine the types of fees (i.e., search, review and/or duplication) that may be legally assessed.  This determination must be premised on the nature of the requester and the purpose for which the records are requested.  The statute thus provides that

> (I) fees shall be limited to reasonable standard charges for document search, duplication, and review, when records are requested for commercial use;

> (II) fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research; or a representative of the news media; and

> (III) for any request not described in (I) or (II), fees shall be limited to reasonable standard charges for document search and duplication.

_____

[2] In National Security Archive v. Department of Defense, 880 F.2d 1381 (D.C. Cir. 1989), cert. denied, 494 U.S. 1029 (1990), the D.C. Circuit relied upon the statements of the legislation's co-sponsors (including Reps. English and Kindness) in construing the statute.  The court noted that the FOIA fee amendment

> was proposed on the floor of the Senate in the closing days of the 99th Congress. Accordingly, it was enacted in haste and without having been referred to the committees that would normally have generated a legislative history to which we could look for guidance as to the meaning of the statute. In such circumstances, the Supreme Court has held that we must look to the statements of the sponsors of the bill as "the only authoritative indications of congressional intent."

Id. at 1384-1385 (citing North Haven Board of Education v. Bell, 456 U.S. 512, 527 (1982).

5 U.S.C. § 552(a)(4)(A)(ii).  As the D.C. Circuit has noted, the amended FOIA grants "preferred status" to qualifying requesters by limiting the fees associated with their requests.  <u>National Security Archive v. Department of Defense</u>, 880 F.2d 1381 (D.C. Cir. 1989), <u>cert. denied</u>, 494 U.S. 1029 (1990).  <u>See also Media Access Project v. FCC</u>, 883 F.2d 1063, 1071 (D.C. Cir. 1989) ("preferred fee category status").

After the agency renders this initial determination and places the requester in the appropriate category, it may apply the second prong of the statutory scheme and determine whether the assessable fees should be waived or reduced, depending upon the nature of the information at issue:

> Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

5 U.S.C. § 552(a)(4)(A)(iii).

The statute also imposes an additional limitation on an agency's ability to assess specific fees, depending upon the requester's status.  Preferred category requesters (educational, scientific and news media) may not be charged for the first one hundred pages of duplication.  Requesters in the third category ("other" -- neither preferred nor commercial) may not be charged for the first two hours of search time or for the first one hundred pages of duplication.  5 U.S.C. § 552(a)(4)(A)(iv)(II).  Commercial requesters do not qualify for these reductions.

The statutory fee scheme thus breaks down as follows:

> <u>Commercial Requesters</u> -- May be assessed fees for
> document search, duplication, and review;
>
> <u>Preferred Requesters</u> -- May be assessed fees for
> duplication, with the first 100 pages provided free of
> charge;
>
> <u>All Other Requesters</u> -- May be assessed fees for
> document search and duplication, with the first two
> hours of search and first 100 pages provided free of
> charge.

Any of these assessable fees may be reduced or waived on a case-by-case basis when disclosure of the information is deemed to be "in the public interest" under the standard established in 5 U.S.C. § 552(a)(4)(A)(iii).

## II.  <u>The Court Has Jurisdiction To Grant The Requested Relief</u>

The court's jurisdiction to consider this matter and grant appropriate relief is clear.  The FOIA provides, in pertinent part:

> On complaint, the district court of the United States in
> the district in which the complainant resides, or has
> his principal place of business, or in which the agency
> records are situated, or in the District of Columbia,
> has jurisdiction to enjoin the agency from withholding
> agency records and to order the production of any agency
> records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B).  Further, 5 U.S.C. § 552 (a)(4)(A)(vii), which was enacted as part of the 1986 fee amendment, provides:

> In any action by a requester regarding the waiver of
> fees under this section, the court shall determine the
> matter de novo: Provided, That the court's review of the
> matter shall be limited to the record before the agency.

Any doubt as to the scope of this statutory provision was removed prior to enactment when Sen. Hatch, one of the amendment's

co-sponsors, explained the Senate's revision of the language
contained in the House bill:

> . . . this provision limits significantly the de novo
> review standard found in H.R. 6414.  It strikes the
> words "reduction or" to specify that denovo review is to
> apply only to the waiver provisions of this section.
> Thus, de novo review applies to <u>review of eligibility of
> scholar[s], bonafide news representatives, and
> commercial requesters for waivers</u>.  It does not apply to
> reductions of fees requested under the standards of
> (iii).  These reduction issues will continue to be
> reviewed under the arbitrary and capricious standard.

132 Cong. Rec. S14040 (daily ed. Sept. 27, 1986) (remarks of Sen.
Hatch) (emphasis added).  <u>See</u> <u>National Security Archive</u>, 880 F.2d
at 1385-1387 (relying on remarks of Sen. Hatch).  It was thus the
opinion of Sen. Hatch that the courts would not only review the
"eligibility" status of requesters, but that the scope of such
judicial review would be broader than the courts' scrutiny of
"public interest" determinations rendered under Section
552(a)(4)(A)(iii).  Since 1986, the courts of this circuit have
exercised that jurisdiction on several occasions.  <u>See</u>, <u>e.g.</u>,
<u>National Security Archive</u>; <u>Judicial Watch v. Department of
Justice</u>, 133 F. Supp. 2d 52 (D.D.C. 2000).  <u>See also</u> <u>Media Access
Project v. FCC</u>, 883 F.2d 1063, 1071 (D.C. Cir. 1989) (where agency
denies "request . . . for preferred status," FOIA requester "can
seek immediate judicial review of the denial").

   Plaintiff has exhausted the applicable administrative
remedies.  <u>See</u> Exs. 4 & 6 ("you have a right to judicial review
. . . in accordance with Title 5 USC § 552(a)(4)(B)").  As the
FOIA provides, "the court shall determine the matter <u>de</u> <u>novo</u>," and

defendant bears the burden of sustaining its action.   5 U.S.C. §
552(a)(4)(B).

### III. <u>Plaintiff Is Entitled To Entry Of A Restraining Order</u>

In considering plaintiff's request for the entry of a
preliminary injunction compelling defendant to grant plaintiff
"news media" fee status and begin the processing of plaintiff's
FOIA request, the court must assess "[t]he familiar factors
affecting the grant of preliminary injunctive relief -- 1)
likelihood of success on the merits, 2) irreparable injury to the
plaintiff, 3) burden on  . . .  others' interests, and 4) the
public interest." <u>Jacksonville Port Authority v. Adams</u>, 556 F.2d
52, 57 (D.C. Cir. 1977) (citing <u>Virginia Petroleum Jobbers
Association v. FPC</u>, 259 F.2d 921, 925 (D.C. Cir. 1958), and <u>A
Quaker Action Group v. Hickel</u>, 421 F.2d 1111, 1116 (D.C. Cir.
1969)).  Consideration of these factors here establishes
plaintiff's entitlement to injunctive relief.

### A. <u>Plaintiff Will Prevail On The Merits</u>

In assessing plaintiff's likelihood of prevailing, the court
must consider the merits of one simple issue: whether plaintiff
has established its entitlement to treatment as a "representative
of the news media" under the FOIA's fee provisions.  Plaintiff
will prevail on that issue.

### 1. <u>Plaintiff Is Entitled To "News Media" Status</u>

In <u>National Security Archive v. Department of Defense</u>, 880 F.2d 1381 (D.C. Cir. 1989), <u>cert</u>. <u>denied</u>, 494 U.S. 1029 (1990), the D.C. Circuit definitively construed "representative of the news media" in a manner that leaves no question as to plaintiff's entitlement to that preferred status.  The court held that a "representative of the news media" is "a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."  881 F.2d at 1387.  In reaching that holding, the court quoted one of the sponsors of the 1986 FOIA amendments:

> "It is critical that the phrase 'representative of the news media' be broadly interpreted if the act is to work as expected. . . .  In fact, <u>any person or organization which regularly publishes or disseminates information to the public . . . should qualify for waivers as a 'representative of the news media.'</u>"

<u>Id</u>. at 1386, <u>quoting</u> 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) (remarks of Sen. Leahy) (emphasis added by the court).

On the administrative record, there was no question that plaintiff is (as the D.C. Circuit put it) an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience" and (as Sen. Leahy articulated the test) an "organization which regularly publishes or disseminates information to the public."

In its initial request letter, plaintiff stated that "EPIC publishes a biweekly electronic newsletter, issues regular public reports and analyses, and maintains a free online electronic

library," and that "[a]ny information that is obtained as a result of this request will be disseminated through these publications and others."  Ex. 1.  In support of its subsequent appeal, plaintiff stated that:

> EPIC . . . routinely and systematically disseminates information to the public.  This is accomplished through several means.  First, EPIC maintains a heavily visited Web site that highlights the "latest news" concerning privacy and civil liberties issues.  . . .  The site also features scanned images of documents EPIC obtains under the FOIA.  Second, EPIC publishes a bi-weekly electronic newsletter that is distributed to over 15,000 readers . . .  The newsletter reports on relevant policy developments of a timely nature (hence the bi-weekly publication schedule).  It has been published continuously since 1996, and an archive of past issues is available at our web site.  Finally, EPIC publishes and distributes printed books that address a broad range of privacy, civil liberties and technology issues.

Ex. 3.  Plaintiff attached to its appeal letter (and made part of the administrative record now before the court) a copy of the homepage of the EPIC web site; a copy of a web page displaying scanned images of documents EPIC obtained under the FOIA; a copy of a web page displaying an archive of past issues of the EPIC electronic newsletter; and a list of seven books published by plaintiff.  Id.

    After defendant rendered a negative appellate decision, plaintiff requested reconsideration and stated, inter alia, that:

> EPIC disseminates information to the public in several distinct ways.  We believe that these mechanisms, which we have consciously developed to distribute information as broadly as possible, establish that EPIC is "organized and operated to publish or broadcast news to the public."

> We maintain a heavily visited Web site that highlights the "latest news" concerning privacy and civil liberties issues.  These featured news items reflect EPIC's editorial judgment concerning what is newsworthy for our

audience, and include EPIC's analysis of information
derived from a variety of sources, including material
obtained under the FOIA.

. . .

EPIC publishes a bi-weekly electronic newsletter . . .
[which] reports on relevant policy developments of a
timely nature (hence the bi-weekly publication
schedule).  As with the news items published on our
homepage, the newsletter reports on recent events of
interest to our subscribers and incorporates information
from a variety of sources (including FOIA requests), as
well as EPIC's analysis of such data.  It is available
at no charge to any individual or organization that
chooses to subscribe.  The newsletter has been published
continuously since 1996, and, as previously noted, an
archive of past issues is maintained at our web site.

. . .

EPIC publishes and distributes printed books that
address a broad range of privacy, civil liberties and
technology issues.  A list of EPIC publications was
previously provided.  Similar to our website and
newsletter, these paper publications reflect EPIC's
analysis of information derived from various sources and
which we believe is of interest to our audience.

Ex. 5 at 2-4.  Plaintiff attached to its request for

reconsideration a copy of a sample issue of EPIC's electronic

newsletter.  Plaintiff also provided examples of news items that

have been featured on its Internet homepage and that are now

available in the news archive on its website (which, plaintiff

noted, contains news items dating back to 1998).  Id.  These

supporting materials were part of the administrative record and

now provide the factual basis for the court's de novo

determination of plaintiff's entitlement to "news media" status.

5 U.S.C. § 552 (a)(4)(A)(vii).

Based upon the evidence of record, there can be no question

that plaintiff is an "entity that gathers information of potential

interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."  881 F.2d at 1387.  Indeed, as a review of the administrative record in <u>National Security Archive</u> indicates, plaintiff here has a far more solid and longstanding record of publication than the National Security Archive ("the Archive") had when the court of appeals held that it was entitled to "news media" status.

In support of its request for preferred fee status, the Archive submitted a declaration to defendant DoD, which the district court described as follows:

> The declaration states that plaintiff is a public interest, scholarly research institute and library, the primary function of which is to make available government information regarding foreign, defense, intelligence and international economic policy.  The declaration describes plaintiff's employees and consultants as a collection of scholars and experts in various subject areas.  [The declaration] represents that the bulk of plaintiff's work in the creation of its "archival" services involves the preparation of detailed indexes and finding aids which facilitate the use of the documents for research. Plaintiff's materials are open to the public without charge.  [The declaration] also notes that plaintiff is a division of the Fund for Peace, Inc., a non-profit corporation to which the Internal Revenue Service (I.R.S.) has granted tax-exempt status as an entity organized and operated exclusively for educational purposes.

> [The declaration] represents that plaintiff, its staff, and affiliated scholars have disseminated or will disseminate information in a variety of ways, including: working closely with journalists and scholars; publishing an account of the "Iran-Contra Affair"; publishing articles relating to document sets; publicizing plaintiff's holdings; participating in or organizing conferences; and appearing in public forums. In the future, plaintiff plans to sell document sets and indexes to libraries.

<u>National Security Archive v. Department of Defense</u>, 690 F. Supp. 17, 19 (D.D.C. 1988) (citations omitted).

In holding the Archive to be entitled to "news media" status, the D.C. Circuit concluded that

> [t]he Archive relies upon a number of its different endeavors to support its claim to be a representative of the news media.  With one key exception, however, each of those endeavors is . . . insufficient to establish an entitlement to preferred status.  The single exception is <u>the Archive's plan to act, in essence, as a publisher, both in print and in other media</u>.

881 F.2d at 1385, 1386 (emphasis added).

To a large extent, the Archive's publication activities were, at the time of the decision, little more than a "plan."  The court of appeals noted that the organization "has previously published only one book . . ., but it has expressed a firm intention . . . to publish" more material.  <u>Id</u>. at 1386.  In contrast, here plaintiff provided defendant DoD with evidence of 1) at least seven books published; 2) a bi-weekly newsletter published continuously for eight years; and 3) a popular web site that contains, <u>inter alia</u>, scanned copies of documents obtained under the FOIA and archived news items dating back four years.

Having shown the agency far more than a "plan" or a "firm intention," plaintiff demonstrated a longstanding track record of publication in both print and electronic media.  Under the standard articulated by the D.C. Circuit in <u>National Security Archive</u>, plaintiff established its entitlement to "news media" status and will prevail on the merits.

## 2. <u>Defendant DoD's Rationales Lack Merit</u>

At the administrative appeal level, defendant DoD stated several rationales for denying plaintiff "news media" status. They all lack merit.

In its letter to plaintiff dated April 16, 2002, defendant cited plaintiff's self-description as, <u>inter</u> <u>alia</u>, a "non-profit, educational organization" and a "public interest research center" as the basis for defendant's determination that plaintiff is not "an entity that is both <u>organized and operated to disseminate information</u>." Ex. 4 (emphasis in original). First, defendant failed to explain why it considered the phrases it cited to be mutually exclusive. More importantly, the stated rationale flies in the face of the <u>National Security Archive</u> opinion; the Archive described itself as a "division of . . . a non-profit corporation . . . granted tax-exempt status as an entity organized and operated exclusively for educational purposes" and as "a public interest, scholarly research institute." 690 F. Supp. at 19.

In its letter of May 28, 2002, defendant DoD denied plaintiff's request for reconsideration, reiterating that EPIC describes itself on its web site as "a public interest research center . . . established . . . to focus public attention on emerging civil liberties issues." Ex. 6. Defendant asserted that it was the Congressional intent that "public interest groups such

as EPIC do not fall within the media (most favorable fee) category."  Id.

Defendant also asserted, for the first time, that <u>any</u> organization recognized by the Internal Revenue Service as tax-exempt under 26 U.S.C. § 501(c)(3) is <u>de</u> <u>facto</u> ineligible for treatment as a "news media" requester.  Ex. 6 at 2.

As noted, the D.C. Circuit granted "news media" status to the Archive upon a record that clearly established it to be a self-described "public interest" organization and an entity granted tax-exempt status by the IRS.  Indeed, a significant portion of the court's opinion was devoted to the question of whether the Archive's tax-exempt status under Section 501(c)(3), standing alone, would qualify it for preferred fee treatment as an "educational" entity (the court held that it would not).  880 F.2d at 1383-1385.  For defendant DoD to now suggest that tax-exempt status <u>disqualifies</u> a requester is remarkable.

### B. Plaintiff Will Suffer Irreparable Injury In The Absence Of The Requested Injunctive Relief

Unless defendant's unlawful failure to grant plaintiff preferred fee status is immediately enjoined, plaintiff will suffer irreparable harm.[3]  Notwithstanding the FOIA's requirement

---

[3] Given the strength of plaintiff's position on the merits, even "a relatively slight showing of irreparable injury" is adequate to justify the issuance of a preliminary injunction.  As the D.C. Circuit has held,

> [i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak.  An injunction may be justified, for example, where there is a particularly

that an agency shall disclose requested records within 20 working days, 5 U.S.C. § 552(a)(6)(A)(i), defendant DoD has repeatedly advised plaintiff that "a search for documents responsive to your request will not be initiated until we receive your willingness to pay fees that you may incur as an 'other' requester." Ex. 2; see also Ex. 4 at 2.  Plaintiff submitted its request on February 21, 2002; more than four months have passed without defendant taking any steps to process the request while insisting upon a commitment to incur fees that plaintiff legally may not be charged.

The very nature of the right that plaintiff seeks to vindicate in this action -- adherence to statutory requirements for the disclosure of agency records -- depends upon timeliness. The courts have recognized that preliminary injunctive relief is appropriate, and the requisite injury is present, in cases where "time is of the essence." See, e.g., United States v. BNS, Inc., 858 F.2d 456, 465 (9th Cir. 1988); Martin-Marietta Corp. v. Bendix Corp., 690 F.2d 558, 568 (6th Cir. 1982).  Under the statutory scheme Congress established in the FOIA, it is clear that "time is of the essence" here and that any further delay in the processing of plaintiff's request will cause irreparable injury.

In National Security Archive, the district court noted that, as here, DoD "will not process plaintiff's requests unless plaintiff agrees to incur fees for the search . . . of documents."

---

                strong likelihood of success on the merits
                even if there is a relatively slight showing
                of irreparable injury.

CityFed Financial Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995) (citation omitted).  Nonetheless, plaintiff's showing of harm here is substantial.

690 F. Supp. at 18.  "Thus, DoD would force plaintiff to risk
liability for search . . . costs before allowing it to seek
judicial review of the denial of a waiver based upon status."  Id.
Rejecting DoD's attempt to delay adjudication, this court held

> [t]here is a concrete legal dispute, and plaintiff's
> strong interest in the prompt consideration of the
> allegedly unlawful agency action is not outweighed by
> any hardship to the agency or by a significant judicial
> interest in favor of delay.  Furthermore, the
> legislative history of the 1986 Amendments indicates an
> intent to have disputes over fee waivers determined at
> an early stage.

Id. (citations omitted; emphasis added).

## C. Injunctive Relief Will Not Burden Others' Interests

Defendant DoD cannot be said to be "burdened" by a
requirement that it comply with the law.  The immediate relief
plaintiff seeks will require nothing more of defendant than what
the law already mandates -- granting plaintiff "news media" status
and processing plaintiff's FOIA request.  Nor will the requested
relief burden the interests of other parties who have submitted
FOIA requests to defendant DoD in any manner beyond that foreseen
by Congress.  In providing for preferred fee status for qualifying
requesters, Congress intended that such requests would be treated
more favorably than those that do not qualify for such treatment.
Fulfillment of the legislative intent cannot be characterized as a
burden on any party's interests.

## D. The Public Interest Favors The Requested Relief

The final criterion for the issuance of a preliminary injunction is clearly satisfied in this case.  The D.C. Circuit has long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate."  <u>Jacksonville Port Authority</u>, 556 F.2d at 59 (D.C. Cir. 1977).  Such adherence is all that plaintiff seeks here.  The public interest will also be served by the processing of the requested records, which will further the FOIA's core purpose of "shedding light on an agency's performance of its statutory duties."  <u>United States Dep't of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749, 773 (1989).  As this court has noted, "[t]here is public benefit in the release of information that adds to citizens' knowledge" of government activities.  <u>Center to Prevent Handgun Violence v. U.S. Department of the Treasury</u>, 49 F. Supp. 2d 3, 5 (D.D.C. 1999).  The public interest favors the issuance of an order directing defendant DoD to remove an unlawful obstacle to the release of the requested information.

<u>**CONCLUSION**</u>

For the foregoing reasons, plaintiff's motion for a preliminary injunction should be granted.  Defendant should be directed to grant plaintiff "news media" fee status and immediately process plaintiff's FOIA request.

<u>**REQUEST FOR ORAL HEARING**</u>

Pursuant to LCvR 65.1, plaintiff respectfully requests an oral hearing on this motion.  A statement of facts which make expedition essential is contained in the accompanying declaration of counsel.

Respectfully submitted,

_____
DAVID L. SOBEL
D.C. Bar No. 360418

MARC ROTENBERG
D.C. Bar No. 422825

ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC  20009
(202) 483-1140

Counsel for Plaintiff